# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

PAUL FLETCHER,                    )
                                  )
            Plaintiff,            )
                                  )    Cause No. 2:14-CV-231
      vs.                         )
                                  )
HOEPPNER WAGNER & EVANS,          )
LLP, *et al.*,                    )
                                  )
            Defendants.           )

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant Wayne Golomb's Motion For Summary Judgment, filed by Defendant, Wayne Golomb, on January 9, 2017 (DE #137); (2) Defendant Wayne Golomb's Motion For Sanctions, filed by Defendant, Wayne Golomb, on January 9, 2017 (DE #139); and (3) Defendant Wayne Golomb's Motion to Strike Certain Exhibits, filed by Defendant, Wayne Golomb, on July 11, 2017 (DE #196). For the reasons set forth below, the Motion for Summary Judgment (DE #137) is **GRANTED**, and all claims against Defendant Wayne Golomb (Counts II-IV of the first amended complaint), are **DISMISSED WITH PREJUDICE**. Additionally, the Motion for Sanctions (DE #139) is **DENIED**. Finally, the Motion to Strike Certain Exhibits (DE #196) is **DENIED**. This case remains pending on Count I against Defendant, Hoeppner Wagner & Evans, LLP.

BACKGROUND

Plaintiff, Paul Fletcher, who is currently pro se, has

asserted three claims against Defendant, Wayne Golomb: constructive fraud, constructive trust, and "accounting and turnover." (DE #38, First Am. Compl.) The instant case stems from Fletcher's belief that he is entitled to inherit money after his friend Scott Taylor's death, and his belief that Wayne Golomb and another individual, Mark Zupan, conspired together to have Taylor's beneficiary changed unbeknownst to Taylor. Specifically, Fletcher believes that Zupan impersonated Taylor on a telephone call to Fidelity requesting a beneficiary change form, and that Taylor's signature was forged on that document. (DE #189 at 22-23.) Taylor entrusted Golomb to manage some of his financial accounts, and Golomb had limited trading authority on three of Taylor's Fidelity retirement accounts.

Defendant, Wayne Golomb, filed the instant motion for summary judgment on January 9, 2017 (DE #137), asking for judgment on the claims against Golomb. On January 19, 2017, Golomb filed a notice of the summary judgment motion, alerting pro se Plaintiff to his duty to respond in accordance with *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992). After a series of extensions and other pretrial motions, Fletcher filed a response on June 13, 2017 (DE #189). On July 11, 2017, Golomb filed a reply (DE #198). Fletcher then filed a surreply on August 7, 2017 (DE #203).

On the same day he filed his motion for summary judgment, Golomb also filed a motion for sanctions (DE #139). Golomb argues

that from the beginning of this litigation, it has been clear that Fletcher lacks any evidence supporting his claims against Golomb, and the case is patently frivolous. As such, Golomb requests the Court impose sanctions and compensate Golomb for the costs and fees expended in defending this alleged frivolous claim. In his response filed on February 16, 2017, Fletcher contends that he does possess circumstantial evidence to support his claims, and that he has been actively seeking additional discovery during the litigation, so his claims cannot be frivolous. (DE #154). Golomb filed a reply on February 22, 2017 (DE #158), arguing Fletcher's response was untimely, and that sanctions are appropriate and warranted.

On July 11, 2017, Golomb filed a Rule 56 motion to strike certain exhibits that Plaintiff attached to his response in opposition to Golomb's motion for summary judgment. (DE #196.) Fletcher filed a response in opposition to the motion to strike on August 7, 2017. (DE #202.)

All of the instant motions are fully briefed and ready for adjudication.

DISCUSSION

Undisputed Facts

This case involves a lengthy set of facts. On July 7, 2014, Plaintiff filed a *pro se* Complaint for Legal Malpractice in the above captioned matter (DE #1). On October 17, 2014, before

service was made on any defendant, Attorney Alison Downs Spanner appeared on behalf of Fletcher (DE #6). Shortly thereafter, on November 17, 2014, Attorneys Donald L. Johnson and Julie A. Boynton filed Applications to Appear Pro Hac Vice on behalf of Fletcher (DE ##10, 11). Attorney Spanner withdrew her appearance on December 11, 2014 (DE ##20, 21). Attorneys Johnson and Boynton withdrew their appearances in August and November 2016, and Fletcher has represented himself pro se ever since.

On March 6, 2015, Plaintiff, by counsel, filed his Amended Complaint (DE #38). In the Amended Complaint, Plaintiff alleges that Taylor told Fletcher he was the beneficiary of his investment accounts which were valued at just under $1,000,000.00. (DE# 38 at ¶ 17.) Plaintiff further alleges that based on "conversations which Taylor had with Plaintiff and other friends before his death, [the defendant] Golomb had control over Taylor's accounts at Fidelity and approximately $500,000 in maturing certificates of deposit belonging to Taylor." (DE 38 at ¶ 21). Despite these claims, Plaintiff acknowledges in his Amended Complaint that he "has been unable to corroborate with documentary evidence what he had been told by Taylor." (DE 38 at ¶ 89). However, Fletcher does attach documents to his memorandum in opposition showing that Fletcher was at one point the primary beneficiary on the three Fidelity retirement accounts. (DE #189-1, Ex. A.)

Golomb previously filed a Motion to Dismiss for Failure to

State a Claim with this Court on April 20, 2015 (DE #46). Golomb argued the Amended Complaint only contained self-serving, unsupported conspiracy theories (DE #46). Plaintiff acknowledged in his response that he lacked evidentiary support for his allegations against Golomb; however, he cast blame on Golomb for failing to disclose information and documents, and on his own former attorneys. (DE #60.) This Court denied Golomb's motion to dismiss on July 29, 2015 (DE #66). In considering the procedural posture of the case, this Court found Plaintiff had successfully pled his causes of action when the facts were construed in the light most favorable to Plaintiff (as they must be at the dismissal stage). (DE #66).

Since the denial of Golomb's motion to dismiss, this matter has been subjected to more than a year of discovery. This discovery has included the depositions of Wayne Golomb, Paul Fletcher, and Carole Wockner (Mr. Fletcher's wife). It has also included the exchange of written discovery, including Interrogatories, Requests for Production and Requests for Admissions. Plaintiff initially claimed in his Amended Complaint and response to the motion to dismiss that he did not have evidentiary support for his allegations because Golomb supposedly had the information. Therefore, Plaintiff issued Interrogatories to Golomb. (*See* DE #140-1, Ex. A.) In these Interrogatories, Golomb was asked about the current location of funds or assets that

belonged to Scott Taylor. (*Id.* at Interrogatory No. 1.) In response, Golomb answered that his "involvement with Scott Taylor's investment accounts was limited to having trading authority as to some of Scott Taylor's retirement accounts held by Fidelity Investments during Scott Taylor's lifetime." *Id.* Golomb further indicated that he had no record of those accounts. *Id.* Golomb was also asked whether he was currently in possession or control of any of Mr. Taylor's assets, and Golomb stated that he was not. (*Id.* at Interrogatory No. 15.) In addition to Golomb having limited trading authority over Taylor's Fidelity retirement accounts, they had another relationship - Taylor was also a skilled mechanic who worked on Golomb's cars. (First Am. Compl. ¶¶ 13, 19.)

Plaintiff also served Golomb with Requests for Production. (*See* DE #140-2, Ex. B.) At that time, Plaintiff requested that Golomb produce, *inter alia*, the following materials:

Your entire file related to Scott Taylor.

Documents related to any funds or assets belonging to or in which Scott Taylor had an interest that you held, received, managed, accessed, controlled, invested, transacted, advised, kept, or otherwise had any involvement including but not limited to account statements, cancelled checks, portfolios, and the like.

Documents reflecting any transfer of funds or assets owned by Scott Taylor or in which Scott Taylor transferred to you, a relative of yours, an agent of yours, or a designee of yours.

Documents related to any funds you held, received, accessed, managed, controlled, invested, transacted, advised, kept, or otherwise had any involvement which Scott Taylor owned or had an interest.

> Documents related to or concerning Scott Taylor and/or his assets.
>
> All certificates of deposit in which Scott Taylor had an interest.
>
> Statements from any stock brokerage firms or from commodity brokerage firms for accounts wholly or partially in the name of Scott Taylor or under the name of any other person or entity which are being held for the benefit of Scott Taylor.

*Id.* In response to each of these requests, Golomb responded that he did not have any responsive documents. *Id.*

On March 23, 2016, Plaintiff took the deposition of Golomb. Golomb testified that during the last two years of Taylor's life, Taylor "was not interested in whatever happened to the money" and Golomb did not remember making trades for him anymore. (Golomb Dep. at 39-40.) Yet, Fletcher points to Fidelity's Symphony log which shows that Golomb was still calling about Taylor's accounts, making certain actions on them, requesting information about them, and trying to gain additional trading authorization, even through 2007 and 2008. (DE #189-3, Ex. E.)

Later during the litigation, Golomb issued Requests for Admissions to the Plaintiff in June 2016. (*See* DE #140-3, Ex. C.) Plaintiff was first asked to admit that he does not have any evidence that Scott Taylor owned any certificates of deposit at the time of his death. (*Id.* at Request No. 1.) Plaintiff said he had received documents from Fidelity and Chase, but he was still "awaiting documents and deposition testimony." *Id.* Similarly, Plaintiff was asked to admit that he did not have any evidence that

7

Golomb possessed or controlled any certificates of deposit that may have been held by Taylor. (*Id.* at Request No. 2.) Plaintiff said he was unable to answer because "he is awaiting documents and deposition testimony which may establish who has the CD proceeds." *Id.*

In the Requests for Admissions, Plaintiff was further asked to admit that he does not have any evidence that Golomb conspired or collaborated with Mark Zupan, or anyone else, to change Mr. Taylor's beneficiaries on any accounts. (*Id.* at Request No. 6.) Plaintiff indicated that he "simply is unable based on the information available to him to admit or deny this allegation." *Id.* Similarly, Plaintiff was "simply [ ] unable based on the information available to him to admit or deny" whether he had any evidence that Golomb, or any other individual, forged Taylor's name on any beneficiary form. (*Id.* at Request Nos. 7 and 8.) Plaintiff was also "simply [ ] unable based on the information available to him to admit or deny" whether he had any evidence that Golomb conspired with anyone to deprive Plaintiff of any assets from Taylor's estate or retirement accounts; whether he had any evidence that Golomb wrongfully obtained any assets or funds from Taylor; or whether he had any evidence that Golomb was aware that Scott Taylor had changed his beneficiary on any of his accounts. (*Id.* at Request Nos. 9, 10 and 12.) Finally, Plaintiff was unable to admit or deny whether he had any evidence that Golomb withheld or

transferred any funds belonging to Plaintiff or whether Golomb currently holds any funds that belong or belonged to Taylor or the plaintiff because "he is awaiting documents and deposition testimony." (*Id.* at Request Nos. 13 and 14.)

On October 12, 2016, Plaintiff's deposition was taken. (*See* DE #140-4, Ex. D, Fletcher Dep. at 1.) During his deposition, Fletcher was asked why he sued Golomb. (*Id.* at p. 199, ll. 14-15.) In response, Plaintiff indicated, "based on a lot of the phone records from AT&T that he was somehow involved with Mark Zupan in controlling what transpired with Scott's savings." (*Id.* at p. 199, ll. 16-19.) Plaintiff was additionally questioned:

Q: Okay. And you mentioned phone records that showed some calls between Mr. Zupan and Mr. Golomb; is that right?

A: Yes.

Q: And correct me if I'm wrong, but those phone records show who placed the call; is that right?

A: Yes.

Q: And the duration of the call, is that right?

A: Yes.

Q: But they do not show, obviously, a transcript of the call?

A: No.

Q: So, is it fair to say that you do not have any information regarding what was discussed during any of those - -

A: No.

Q: Telephone conversations?

A: No. I don't have any information.

Q: So, you don't know whether these accounts were discussed during any of those conversations, is that correct?

A: I wouldn't be able to prove it, no.

(*Id.* at p. 201, ll. 18-25; p. 202, ll. 1-14.)

Fletcher has attached to his memorandum in opposition to the motion for summary judgment Fidelity "symphony logs" for Taylor's accounts, which, while somewhat difficult for the Court to decipher, show dates and times of phone calls about Taylor's Fidelity account, and notes by the Fidelity employee about each conversation. (DE #189-1 Ex. E.) While Golomb testified during his deposition that he never did anything to assist Taylor in changing beneficiaries (Golomb Dep. at 117-18), Kim Rice from Fidelity stated in her deposition in the underlying state case that Golomb asked her to send Taylor a beneficiary change form. (Rice Dep., DE #189-5, Ex. X at 56-57.) Rice testified that she returned Taylor's telephone call (Fletcher believes Zupan impersonated Taylor during this call), and per Taylor's request, she pre-filled Mark Zupan's name and information on the change of beneficiary form, and then sent it to Taylor's home in Arkansas for his signature. (*Id.* at 23-29.) Fletcher has also produced Zupan's phone records which show that between January 1, 2008, through early October 2008, Golomb called Zupan's home phone number 6 times. (DE #189-4, Ex. R.) Finally, while Golomb testified during his deposition that he did not know if Taylor had CD accounts (Golomb Dep. at 30-31), there is evidence in the Fidelity Symphony

Log that might support an inference that he did know about the CDs (DE #189-1, Ex. E).

Plaintiff was also asked during his deposition about his allegations pertaining to the alleged forgery of the beneficiary form. (DE #138-3, Fletcher Dep. at 209-210.) Plaintiff conceded that he did not have any "physical evidence" that the change of beneficiary form was falsified in any way. (*Id.* at 211-12.) Further, Plaintiff testified that he did not have any evidence that Golomb had any knowledge of any individual forging Taylor's name on any beneficiary form. (*Id.* at 218.) Plaintiff was asked during his deposition whether he had any evidence that Golomb held $500,000.00 in certificates of deposit owned by Mr. Taylor, and he admitted he did not have any such evidence. (*Id.* at 214.) Similarly, Plaintiff testified that he did not have any evidence of certificates of deposit held by Scott Taylor at all at the time of his death. (*Id.* at 216.) In opposition to the motion for summary judgment, Fletcher has now attached documents as exhibits showing there were CD accounts held at Chase Bank in Crown Point, Indiana, but there is no evidence that Fletcher was ever a beneficiary on these accounts (only that he was at one point the beneficiary on the three retirement accounts at Fidelity), or that Golomb had any trading authority on the Chase Bank CD accounts. (DE #189-2, Ex. F.)

When asked about the alleged conspiracy between Golomb and

Mark Zupan, Plaintiff again indicated that he does not have any direct evidence to support this claim. (Fletcher Dep. at 217-18.) Plaintiff also admitted that he did not have any evidence that Golomb wrongfully obtained any assets or funds. (*Id.* at 219-20.) However, Taylor's mother did give Golomb $30,000 afer Taylor died, because, according to Elsie Taylor, her son made a mistake on one of Golomb's engines and he would have liked Golomb to be compensated for it. (Golomb Dep. at 128.)

I.    Motion to Strike Certain Exhibits

Golomb moves to strike certain exhibits attached to Fletcher's response in opposition to the motion for summary judgment. He argues that Exhibits A-F, L, and R-W (documents from Fidelity, JPMorgan Chase, probate, AT&T call records, and Taylor's driver records), are not authenticated and inadmissible hearsay. (DE #196.) Additionally, he argues that Exhibits J, K, N, and O (affidavits), should be stricken because they are not based on personal knowledge and they contain unsupported speculation, hearsay, and conclusory statements, and Exhibit Y should be stricken because it was not produced in discovery. (*Id.*) Finally, Golomb argues that Exhibits A through Y should be stricken because they are irrelevant to any pending claim before the court. (*Id.*)

As to the argument that the call records and financial records are unauthenticated, on a motion for summary judgment, "[a] party may object that the material cited to support or dispute a

fact *cannot* be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). "In other words, the Court must determine whether the material can be presented in a form that would be admissible at trial, not whether the material is admissible in its present form." *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *2 (N.D. Ill. Feb. 24, 2015); *see also Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) ("We note that the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form.") (emphasis in original). Here, Golomb has not argued that any of the documents are not what they purport to be, or that they cannot be presented in a form that would be admissible as evidence.

With regards to the affidavits and other attached documents, motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). Furthermore, it is the function of this Court, with or without a motion to strike, to carefully review the evidence and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the

statement. *See, e.g., S.E.C. v. KPMG LLP*, 412 F.Supp.2d 349, 392 (S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2016); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004).

In this case, the Court has sifted through the voluminous evidence and has considered it under the applicable federal rules, giving each piece the credit to which it is due. Accordingly, the Court denies the motion to strike (DE #196) as unnecessary.

II. <u>Motion for Summary Judgment</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's

favor.  *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010).  However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case."  *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).  "[I]nferences relying on mere speculation or conjecture will not suffice."  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted).  If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper.  *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Before analyzing the three claims brought by Fletcher, the Court addresses Golomb's request that it take judicial notice of a state court case: Fletcher filed a forgery suit against Mark Zupan in Lake Superior Court under Cause No. 45D02-1405-PL-00014, in which following a bench trial, on July 22, 2016, the Honorable Hawkins entered a judgment in favor of the defendant.  (DE #138, at 3 n. 1.) Fletcher opposes the request for judicial notice, arguing it would be prejudicial to him because of his attorney's deficient

performance at that trial. (DE #189 at 2.) Court records are the most commonly noticed facts, and it is proper for this Court to take judicial notice of the state case against Zupan. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081–82 (7th Cir. 1997); *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); Fed. R. Evid. 201(b).

On the other hand, the Court will not treat the decision by Judge Hawkins as collateral estoppel in this case, because Golomb only first raised his collateral estoppel argument in his reply memorandum. Although this argument may have merit, arguments raised for the first time in a party's reply brief are waived, and the argument is therefore not considered by the Court. *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 575 n.4 (7th Cir. 1987); *see also Shlay v. Montgomery*, 802 F.2d 918, 922 n.2 (7th Cir. 1986).

A.  <u>Constructive Fraud</u>

Some of Fletcher's evidence seems to go against statements Golomb made during his deposition. However, even if we take Fletcher's evidence as true – that Golomb was active with Taylor's accounts the few years before he died, that he knew about the Chase CDs, that Golomb spoke with Rice from Fidelity and let her know that Taylor would be requesting a change of beneficiary form, and

that Golomb and Zupan spoke on the phone at times, this does not alter or lessen Fletcher's duty to properly establish a cause of action.

For constructive fraud, a plaintiff must plead: (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (citing *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996)). Importantly, the plaintiff has the burden of proving the first and last of these elements. *Demming*, 943 N.E.2d at 892. In other words, to prove constructive fraud, Fletcher must show the existence of a duty owed by Golomb to him because of their relationship, and that Golomb gained an advantage. *See Morfin v. Estate of Martinez*, 831 N.E.2d 791, 802 (Ind. Ct. App. 2005).

The duty can arise "in one of two ways: by virtue of the existence of a fiduciary relationship, or in the case where there is a buyer and a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Morfin*, 831 N.E.2d at 802.

17

Generally, whether a legal duty exists between parties is a question of law. *See Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 842-43 (Ind. 2012).

Golomb argues that there is no fiduciary relationship between Golomb and Fletcher. (DE #138 at 10.) "A confidential or fiduciary relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Morfin*, 831 N.E.2d at 802 (quotation omitted); *see also No Baloney Mktg., LLC v. Ryan*, No. 1:09-cv-0200-SEB-TAB, 2010 WL 1286720 (S.D. Ind. Mar. 26, 2010). In this case, it cannot be said that Fletcher gave his confidence to Golomb, as it was Taylor who gave Golomb limited trading authority over the Fidelity investment accounts. "Examples of common relationships where Indiana courts have recognized the potential for a fiduciary duty include 'relations of attorney and client, principal and agent, husband and wife, and parent and child.'" *Zusy v. Int'l Med. Group., Inc.*, 500 F.Supp.2d 1087, 1099 (S.D. Ind. 2007) (quoting *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind. 1991)). Fletcher and Golomb do not fit neatly into any of these recognized categories. Moreover, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with fidelity and good faith. *In re Estate of Muppavarapu*, 836 N.E.2d 74, 77 (Ill. App. Ct. 2005). Yet, Golomb and Fletcher do not exactly have a trustee/beneficiary relationship either, as

Fletcher himself quotes Fidelity's Trading Authorization scope when acting on behalf of account holder Taylor, which gave Golomb limited trading authority to: buy and sell securities in the account holder's account; trade in the owner's account; and receive trade confirmations and account statements. (DE #189 at 8; Pl.'s Ex. D.)

Fletcher provides the Court with no legal argument or case law in support of the proposition that Golomb (who had limited trading authority on some of Taylor's retirement accounts held by Fidelity), owes Fletcher (the at one time beneficiary on those accounts), a fiduciary duty. While it seems possible that maybe Golomb owed Fletcher a duty, as a beneficiary, to properly manage the Fidelity funds so Fletcher would have something to inherit, it is a further stretch that Golomb owed Fletcher a duty to protect his status as beneficiary (or, as Fletcher alleges, to not assist his beneficiary status in being fraudulently changed). Moreover, there is no evidence in the record that Golomb had the power to change the beneficiary on Taylor's behalf. As such, it appears that Fletcher has not established a fiduciary relationship between himself and Golomb.

However, even if Fletcher *could* show that Golomb owed him a fiduciary duty, Fletcher still cannot satisfy the fifth part of the test – that Golomb gained an advantage at Fletcher's expense. Constructive fraud arises where a course of conduct "would secure

an unconscionable advantage." *In re Rueth Dev. Co.*, 976 N.E.2d 42, 52 (Ind. Ct. App. 2012). Fletcher has not presented any evidence that Golomb received any money from funds or certificates of deposit upon Taylor's death, much less presented evidence that Golomb received money from funds that would have gone to Fletcher if Fletcher was still the beneficiary. Moreover, Golomb has stated he does not currently hold any funds that belonged to either Taylor or Fletcher, and Fletcher has produced no contrary evidence.

The closest Fletcher comes to arguing that Golomb gained financially at Fletcher's expense, is when he points out that Golomb received $30,000 from Elsie Taylor (Taylor's mother). Taylor used to work on Golomb's engines, and according to Golomb: "Scott made a mistake on one of my engines. And it had to be fixed. And Scott felt bad about it and apparently had told her, and she brought the matter up. And she said that Scott would have liked you to have been compensated for it." (Golomb Dep. at 128.) But this was a gift from Taylor's mother, after Taylor's death, for money that Taylor felt he owed Golomb from a mistake he made on his car. There is no evidence whatsoever that this money came out of the retirement account that Golomb had limited trading authority over, or that Fletcher should have received this money if he was still the designated beneficiary. Therefore, Fletcher has not shown that Golomb gained financially at the expense of Fletcher.

Consequently, summary judgment is proper on Count II against

Wayne Golomb for Constructive Fraud.

    B.    <u>Constructive Trust</u>

    A constructive trust is "a legal fiction, a common-law remedy
in equity that may only exist by the grace of judicial action." *In
re Nova Tool & Eng'g Inc.*, 228 B.R. 678, 680 (Bankr. N.D. Ind.
1998) (quotation omitted).  It is an "equitable remedy for certain
claims in restitution." *In re Mississippi Valley Livestock, Inc.*,
745 F.3d 299, 305 (7th Cir. 2014).  "[A] constructive trust may be
imposed where a person holding title to property is subject to an
equitable duty to convey it to another on the ground that he or she
would be unjustly enriched if permitted to retain it." *Demming v.
Underwood*, 943 N.E.2d 878, 895 (Ind. Ct. App. 2011).  "An equitable
duty to convey the property may arise if the property was acquired
through a breach of fiduciary duty or constructive fraud." *Id.*

    Fletcher alleges the following in support of his request for
a constructive trust:

> Golomb is believed to have in his possession funds
> which he was holding and managing for Taylor which
> were intended to benefit Plaintiff on Taylor's
> death and which Golomb had an actual or equitable
> duty not to keep but to convey to Plaintiff in
> accord with Taylor's stated wishes.   It was
> Taylor's stated wish that the accounts not be
> probated but that Plaintiff be named as beneficiary
> on the accounts so that the accounts would go to
> Plaintiff outside of probate.

(First Am. Compl. ¶ 98.)  However, the undisputed facts show that
Golomb does not possess, hold, or control any property belonging to

either Taylor or Fletcher. (See DE #140-2, Ex. B, Interrogatory No. 15.) Indeed, Fletcher himself quotes the Fidelity Trading Authorization agreement which states that authorization privileges terminate upon notification in writing of the death of the account owner. (DE #189 at 9, Ex. D.) As such, there is no property in his possession that should be conveyed to Fletcher; moreover, as established earlier, there is no evidence of any constructive fraud. As such, summary judgment is appropriate on Count III against Wayne Golomb for constructive trust.

C. <u>Accounting and Turnover</u>

Fletcher also seeks the equitable relief of accounting and turnover. In support, he alleges:

> Golomb is holding funds which he was managing for Taylor and which were intended to be given to Plaintiff upon Taylor's death and which information and belief Golomb had a duty to tender the funds to Plaintiff, Taylor's beneficiary, upon Taylor's death.

(First Am. Compl. ¶ 100.) As with the previous claim, this allegation fails because there is no evidence that Golomb holds or controls any funds belonging to Taylor or Fletcher. Indeed, the undisputed evidence shows the contrary.

As such, summary judgment is warranted on Count IV against Wayne Golomb for accounting and turnover.

III. <u>Motion for Sanctions</u>

Defendant Golomb has filed a motion for sanctions pursuant to

22

Rule 11 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 1927, contending Plaintiff has pursued a frivolous lawsuit.

Rule 11(c)(2) provides that a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . . ." Fed. R. Civ. P. 11(c)(2); *see also Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. Of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011) ("Rule 11(c) (2) provides that a motion for sanctions must be served on the opposing party, but that it cannot be filed with the court until 21 days have passed from the date of service of the motion."). This 21-day "safe harbor" provision is "not merely an empty formality." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1026 (7th Cir. 1999). While a minor technical violation may be excused (for example, where the party seeking sanctions sent a letter or demand more than 21 days in advance rather than a formal motion), *see Egan v. Huntington Copper Moody & Maguire, Inc.*, No. 12 C 9034, 2015 WL 1631547, at *3 (N.D. Ill. Apr. 10, 2015), that is not the case here, where Golomb did not alert Fletcher in advance that he would seek sanctions if Fletcher did not dismiss the allegations against Golomb.[1] "[A] district court

_____

[1] Golomb asserts in his memorandum that "[a]t several points in this litigation," it became clear that there was no evidence supporting Plaintiff's claims, and "[a]t each of these points,

cannot impose Rule 11 sanctions by motion where the movant ignores the safe harbor." *Egan*, 2015 WL 1631547, at *3 (citing *Divane*, 200 F.3d at 1025). Therefore, Golomb cannot prevail under Rule 11.

Golomb's additional seeking of sanctions under section 1927 is also unsuccessful. 28 U.S.C. section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A court can impose such statutory sanctions against attorneys upon a showing of subjective or objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). Subjective bad faith must be demonstrated "by evidence of malice or ill will," and objective bad faith may be shown by evidence of "extremely negligent conduct, like reckless and indifferent conduct." *Granite State Ins. Co. v. Pulliam Enterps., Inc.*, No. 3:11-cv-432, 2015 WL 8904807, at *3 (N.D. Ind. Nov. 17, 2015)(quoting *Webster v. Hilex Poly Co.*, No. 1:06-cv-529-RLY-DML, 2008 WL 5235975, at *2 (S.D. Ind. Dec. 15, 2008)). Reckless conduct is sanctionable when "the attorney's actions [are] generally so completely without merit as to require

the plaintiff had the opportunity to voluntarily dismiss" (DE #140 at 9), but nowhere in the motion for sanctions or accompanying memorandum does Golomb state he gave Plaintiff the requisite notice that if he did not dismiss his claims, Golomb would seek Rule 11 sanctions.

the conclusion that they must have been undertaken for some improper purpose." *Id.* (quoting *Camarillo v. Pabey*, No. 2:05-CV-455 PS, 2007 WL 3102144, at *7 (N.D. Ind. Oct. 22, 2007)).

While there is some controversy about whether section 1927 could apply to an initial complaint (as opposed to just misconduct by an attorney during the course of a case), the provision authorizes the Court to award only "*excess* costs, expenses, and attorneys' fees reasonably incurred *because of* [the unreasonable and vexatious conduct]." *Egan*, 2015 WL 1631547, at *4 (citing quoting 28 U.S.C. § 1927 (emphasis in original).) Golomb has not shown which excess costs were caused by Fletcher's previous attorneys' alleged vexatious behavior and consequent multiplication of the proceedings. Nor has he presented any evidence that his former attorneys acted with any malice or ill will, or conduct that must have been undertaken for some improper purpose. As such, Golomb cannot prevail under section 1927 either.

CONCLUSION

For the reasons set forth below, the Motion for Summary Judgment (DE #137) is **GRANTED**, and all claims against Defendant Wayne Golomb (Counts II-IV of the first amended complaint), are **DISMISSED WITH PREJUDICE**. Additionally, the Motion for Sanctions (DE #139) is **DENIED**. Finally, the Motion to Strike Certain Exhibits (DE #196) is **DENIED**. This case remains pending on Count I against Defendant, Hoeppner Wagner & Evans, LLP.

25

DATED: September 25, 2017   /s/ RUDY LOZANO, Judge
                United States District Court